[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff has filed for a dissolution of her marriage with the defendant. Based upon the evidence presented at a contested hearing in this matter, the court makes the following findings. CT Page 3556
The plaintiff and the defendant married for the second time on December 24, 1986 in Northford, Connecticut. The parties had been previously married, having married on April 6, 1974 and divorced on June 25, 1986. No children have been born to the parties who are issue of their marriage.
The plaintiff is fifty-seven years old. She has an associates degree from Endicott Junior College. The plaintiff has been employed in the past at a number of different jobs, including as an office supervisor, office manager and customer service manager. From 1991 until 1996, the plaintiff was employed full time as a travel agent at Mercury Travel earning approximately $400 weekly. She left Mercury Travel in 1996 when the branch office at which she was working closed. The plaintiff then worked for Rosenbluth International, a corporate travel management company, and earned $12 per hour. She was employed at Rosenbluth International for only three months and was subsequently unemployed until 1999 when she was rehired part-time by Mercury Travel. She presently works an average of twenty-two and one-half hours each week as a travel agent and earns a net weekly income of $231. The plaintiff is also the beneficiary of a trust established by her father from which she receives $20 weekly.
The plaintiff currently suffers from osteoarthritis. It causes significant pain in her back and neck which she treats with over the counter pain medication. The plaintiff's medical condition does not interfere with her current employment or prevent her from working.
The defendant is sixty-three years old and is generally in good health. The defendant worked at Southern New England Telephone Company ("SNET") for thirty-eight years. He retired in 1995.
After his retirement from SNET, the defendant worked a number of different part-time jobs. His last part-time employment was at Aquatech Labs delivering water samples twenty hours per week at $10.50 per hour. The defendant had planned on ceasing all employment when he became eligible to receive social security benefits in 2000. He did so and became fully retired when he left his job at Aquatech Labs in May 2000.
The defendant currently receives monthly income from a pension in the amount of $1,689 and monthly benefits from social security in the amount of $1,199.
The plaintiff owns the marital home at 366 Village Street in Northford, Connecticut. The property was purchased by the plaintiff in 1965. The court finds the fair market value of the marital home to be $175,000. The home is presently encumbered by a mortgage with a balance of $61,652, leaving a total net equity of $113,348. CT Page 3557
The plaintiff maintains a brokerage account at Donaldson, Lufkin Jenrette which contained $152,235 as of January 31, 2001. The account was initially established in 1996 by the plaintiff with an inheritance of $139,000 which she received upon her mother's death. The plaintiff also possesses an IRA valued at $19,000. She owns a 1991 Buick Regal automobile worth approximately $1,000 and jewelry and furs valued at $17,506. She is presently saddled with credit card debt of $32,231.
The defendant owns property in Fayette, Maine which he inherited approximately thirty-five years ago from his father. The three and one-half acre property sits on a lake and is improved with a small cabin which is not winterized and lacks running water. The current fair market value of the Maine property is $125,000. It is not encumbered by any mortgages.
The defendant currently possesses an IRA at Donaldson, Lufkin Jenrette with a value as of January 31, 2001 of $108,108.[1] He owns a 1999 Chevrolet truck worth approximately $17,000 and he has outstanding liabilities totaling $9,188.
The plaintiff claims that the defendant is primarily at fault for the breakdown of the marriage. The plaintiff contends that their marriage collapsed because of the defendant's erectile dysfunction and his refusal to continue with the parties' retirement plans. The court finds based on the evidence presented that neither party is singularly at fault for the breakdown of the marriage.
The defendant's difficulties with erectile dysfunction were not a cause for the disintegration of the marriage because the plaintiff was well aware of the malady before she remarried the defendant. She cannot now complain that she was deprived of sexual relations and physical affection during this marriage when the very same problems existed during the parties' first marriage.
Beginning in 1990, the parties agreed to a plan for their eventual retirement. Pursuant to that plan, the cabin in Maine would undergo substantial improvements, their home in Northford, Connecticut would be sold, and they would reside in Maine in the warmer months and in Florida in the colder months. The parties subsequently took steps to implement this plan. The plaintiff spent $30,000 to finance renovations to the property in Maine. The cabin was moved back from the lake and placed on a foundation and an architect was hired to draft architectural plans.
Their planning continued until April 1999 when the defendant declared that he no longer wished to adhere to the retirement plans. He was CT Page 3558 concerned that the costs of the renovations to the Maine property would far exceed the estimates. He stated that he wanted to continue to reside in Connecticut and visit Maine during the summer.
The plaintiff was furious with the defendant's unilateral change in their longstanding retirement plans. She demanded that the defendant reimburse her for the $30,000 which she had incurred in connection with the improvements to the Maine property. The defendant did so through a withdrawal from his IRA on May 14, 1999. On February 28, 2000, the plaintiff filed this dissolution action.
There is no doubt that the defendant's rejection of their retirement plans was the catalyst for the plaintiff's bringing this action for divorce. But the issue for the court is whether the defendant's reneging on their plans places him at fault for the breakdown of the marriage. It does not. The defendant wanted the marriage to continue. He reimbursed her for the entire cost of the Maine improvements. He simply had a change of heart on where the parties should live when they retired. While the defendant's actions have understandably caused the plaintiff disappointment and anger, they do not rise to the level of fault for the breakdown of the marriage.
The plaintiff has also filed a motion for contempt that is pending before the court. The plaintiff claims that the defendant violated the automatic orders under Practice Book § 25-5 through withdrawals from his IRA on February 29, 2000 and April 3, 2000. The plaintiff also claims that the defendant, by his withdrawal from his IRA on September 25, 2000, violated the court order entered on April 6, 2000 that he not sell, encumber, transfer or otherwise alienate or dispose of any assets until further order of the court. Based on the evidence presented, the court finds that the defendant did not willfully violate the automatic orders, but that he did willfully violate the court's order of April 6, 2000.
Practice Book § 25-5 provides that certain automatic orders shall apply with service of the complaint for dissolution of marriage upon the defendant. Practice Book § 25-5(a). The defendant was served with the dissolution complaint in this case on February 2, 2000. The automatic orders provide that "Neither party shall sell, transfer, encumber (except for the filing of a lis pendens), conceal, assign, remove, or in any way dispose of, without the consent of the other party in writing, or an order of a judicial authority, any property, individually or jointly held by the parties, except in the usual course of business or for customary and usual household expenses or for reasonable attorneys' fees in connection with this action." Practice Book § 25-5(a)(1). CT Page 3559
On February 29, 2000, the defendant withdrew $5,500 from his IRA. He used $3,000 to hire an attorney to represent him in the dissolution action, $1,950 to pay outstanding bills and $550 was withheld to pay future income taxes. On April 3, 2000, the defendant withdrew $4,000 from his IRA and used it to pay outstanding 1999 federal and state income taxes. I do not find the defendant in contempt of the automatic orders. The funds were used by the defendant to pay attorneys' fees in connection with the dissolution action and to pay outstanding bills and taxes. I find these expenses to be reasonable and these actions to be in accordance with Practice Book § 25-5(a)(1).
The parties also entered into an agreement which was entered as an order of the court on April 6, 2000 that the defendant not sell, encumber, transfer or otherwise alienate or dispose of any assets while the dissolution action is pending until further order of the court. On September 25, 2000, the defendant withdrew $10,000 from his IRA. The defendant used $6,000 to pay his attorney in the dissolution action, $1,000 was used to pay outstanding income and property taxes and $3,000 was withheld for the payment of future income taxes. The defendant knew when he withdrew $10,000 from his IRA on September 25, 2000 that the court order of April 6, 2000 prohibited him from making such withdrawal without prior court approval. He did so anyway. I find his withdrawal of $10,000 from his IRA on September 25, 2000 to be in willful violation of the court order.
The plaintiff also claims that she should be awarded an "adjustment" to the allocation of retirement benefits of 50% of the withdrawals made by the defendant since 1995 from his IRA account at Donaldson, Lufkin Jenrette. She contends that these withdrawals were made despite her objections and in contravention of the parties' agreement to maximize their retirement income. The defendant withdrew approximately $132,613 from his IRA account over a five year period from September 1995 through September 2000. All but $19,500 of the withdrawals were made prior to the filing of this dissolution action. The funds were used for a variety of legitimate purposes, including reimbursement to the plaintiff of the cost of renovations to the Maine property, attorneys' fees in connection with the dissolution action, payment of state and federal taxes and the purchase of a new truck. The expenses paid were reasonable and a 50% adjustment is not appropriate.
In determining the orders issued herein, I have carefully considered all the relevant statutory criteria, including those contained in General Statutes § 46b-81 as they relate to the assignment of property and § 46b-82 as they relate to the award of alimony. The court enters the following orders: CT Page 3560
1. The marriage is ordered dissolved on the grounds of irretrievable breakdown.
2. The defendant shall pay to the plaintiff periodic alimony in the amount of $600 monthly. Alimony shall be payable on the fifteenth day of each month. Alimony shall terminate upon the death of either party, or remarriage or cohabitation by the plaintiff.
3. The plaintiff shall retain sole ownership of the marital home at 366 Village Street in Northford, Connecticut. The plaintiff shall be solely responsible for paying the mortgage, home equity loan, taxes, and liens, if any, on the property. The plaintiff shall hold the defendant harmless and indemnify the defendant with respect to any and all mortgages, liens and encumbrances on the property. To the extent the defendant is currently an obligor on any mortgage, the plaintiff shall take immediate steps to obtain, if possible, a refinancing of such mortgage so that the defendant is no longer an obligor.
4. The plaintiff shall retain her entire interest in the brokerage account at Donaldson, Lufkin Jenrette listed on her financial affidavit, her entire interest in the IRA listed on her financial affidavit and her interest in the Joseph Viviano Trust.
5. The plaintiff shall retain ownership of the jewelry and furs currently in her possession. The plaintiff is awarded sole ownership of the 1991 Buick Regal automobile listed on her financial affidavit.
6. The defendant shall retain his entire interest in the retirement account at Donaldson, Lufkin Jenrette listed on his financial affidavit. The defendant is awarded sole ownership of the 1999 Chevrolet truck listed on his financial affidavit.
7. The parties shall retain the personal property presently in their respective possession except that the defendant is awarded the following personal property currently at 366 Village Street, Northford, Connecticut: two wooden ladders, two air tanks, a tractor trailer with two fertilizer spreaders, a boat motor stand, the kitchen table and chairs located in the cellar, any clothing or personal possessions of the defendant, and the defendant's picture albums.
8. The plaintiff's maiden name of Nancy Viviano is hereby restored.
9. Each of the parties shall be solely responsible for payment of the liabilities listed on their respective financial affidavits.
10. Each of the parties shall be responsible for the payment of their CT Page 3561 respective attorney's fees, except that the defendant is ordered to pay within thirty days attorneys' fees to the plaintiff in the amount of $250 as a result of his willful contempt of the court's order of April 6, 2000.
BY THE COURT
Judge Jon M. Alander